IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

04 OCT 15 PM 2:20

N.D. OF ALABAMA

UNITED STATES OF AMERICA,

    Plaintiff,

v.

CERTAIN REAL PROPERTY LOCATED AT 1260 VICTORIA LANE, BLOUNTSVILLE, ALABAMA, ALSO KNOWN AS "HERITAGE VALLEY FARM", TOGETHER WITH ALL IMPROVEMENTS, FIXTURES, AND APPURTENANCES THEREON,

    Defendant.

CIVIL ACTION NO.

02-AR-2909-S



ENTERED OCT 15 2004

### MEMORANDUM OPINION

Before the court are the objections of claimants, Kennon R. Patterson and Carolyn Patterson (collectively "Pattersons"), to the *Recommendations and Findings* of Magistrate Judge Paul W. Greene. The Pattersons do not object to the recommendation of dismissal without prejudice, but do object to the recommendation that a certificate of reasonable cause be issued under 28 U.S.C. § 2465. Plaintiff, United States of America ("United States"), responded to the objections by insisting that the court accept the findings and recommendations of the magistrate judge, and that it issue a certificate of reasonable cause.

### Facts

On November 27, 2002, the United States filed this civil



forfeiture action claiming the real property in question represented the proceeds of bank fraud, and was subject to forfeiture under 18 U.S.C. §981(a)(1)(c). The United States alleged that an FBI investigation had turned up bank fraud involving Kennon Patterson, Community Bank, and the property at issue here. According to the United States, the FBI received a tip from a member of Community Bank's board of directors in July, 2000 that the Bank was being over-billed by subcontractors for work supposedly done at Bank branches under construction in Alabama. The FBI found that from 1998-2000, the same subcontractors who were reportedly over-billing the Bank for work done at its branches, also performed construction work at the Pattersons' personal residence, the property in question, Heritage Valley Farm. This work included, according to investigators, construction of pools, guest residences, a separate conference building and over seven miles of steel fence tubing surrounding the 1,049 acre property. Employees for one of the contractors, Morgan City Construction ("MCC"), told investigators that MCC performed extensive work at the property from January 1998 to July 2000, but a review of records indicates almost no billing for construction on the property. These documents indicate that during that same time period the contractor over-billed the Bank for work on branch projects. The owners of MCC were convicted for their role in the alleged fraud on October 30, 2002.

On October 29, 2003, Kennon Patterson, the former CEO of Community Bank, was indicted by a grand jury in the Northern District of Alabama for alleged violations of 18 U.S.C. § 1344. The indictment also seeks criminal forfeiture of the property at question here, as the proceeds of an alleged bank fraud. That case has not come to trial.

On October 31, 2003, a restraining order was entered under 21 U.S.C. §853(e)(1)(A), to preserve the availability of the property for criminal forfeiture. The alleged criminal conduct underlying that restraining order is the same as the conduct upon which this civil forfeiture action is based.

## Analysis

The Pattersons object to the issuance of a certificate of reasonable cause. Their objection is three-pronged. First, they claim that the issuance of a such a certificate pursuant to 28 U.S.C. §2465 is inappropriate because a voluntary dismissal is not a "judgment." Second, they allege that even if 28 U.S.C. §2465 is applicable, the United States has made no showing of reasonable cause for the filing of this action. Third, they argue that the court cannot deny any party who believes a seizure was wrongful the opportunity to challenge the seizure through the judicial process. The last of these arguments will be discussed first.

The Pattersons' primary objection seems to be that the court should not "deny access to the courts by the perfunctory issuance

3

of such a certificate." However, their quarrel is not with the magistrate judge, or with the federal courts in general, but with the statute itself. 28 U.S.C. §2465 provides, in pertinent part:

> {I}f it appears that there was reasonable cause for the seizure the court shall cause a proper certificate thereof to be entered and the claimant shall not, in such case, be entitled to costs, nor shall the person who made the seizure, nor the prosecutor, be liable to suit or judgment on account of such suit or prosecution.

There may be a good argument that certificates of reasonable cause stand in the way of meritorious *Bivens* suits, but such an argument is overridden by the statute itself. The purpose of 28 U.S.C. §2465 is clearly to protect persons who seize property from a *Bivens* action or action for trespass. *United States v. Abatoir Place*, 106 U.S. 160, 162 (1882). The statute is designed to reduce the "chilling effect that liability for improvident seizures based on reasonable cause may have on the government." *United States v. All Monies in Acc. 29-0101-62*, 746 F.Supp. 1441, 1446 (D.Hawaii 1990); see also *United States v. One DLO Model A/C, 30.06 Machine Gun*, 904 F.Supp. 622 636-7 (N.D. Ohio 1995) (Dowd, J.). Thus, the Pattersons' disagreement with the statute is presented to the wrong branch of the federal government. Their claim that no party should be shut out of court by a certificate of reasonable cause should have been directed to the Congress, and agreed to by the Congress before their property was seized. The Pattersons do not challenge

4

the constitutionality of the statute.[1] If they had done so, the magistrate judge would have addressed the constitutional question.

The Pattersons also object on the grounds that 28 U.S.C. §2465 does not allow the issuance of a certificate of reasonable cause in a case that the United States has voluntarily dismissed. The Pattersons argue that 28 U.S.C. §2465 only applies where judgment has been entered on the merits. From the plain language of the statute that might be true, but courts have routinely held that §2465 applies even in cases of a dismissal. See, e.g. *United States v. Tito Campanella Societa Di Navigazione*, 217 F.2d 751, 756 (4th Cir. 1954)(finding that "the purpose of the statute... is as important where the is a dismissal of the [action] on exceptions as where there has been a trial on the merits"); see also *United States v. 1461 West 42nd Street, Hialeah, Florida*, 251 F.3d 1329 (11th Cir. 2001)(upholding the issuance of a certificate of reasonable cause in a case which was dismissed at the request of the United States). That the United States voluntarily dismissed this action because other creditors (Exchange Bank and Community Bank) held mortgages with priority over any claim by the United States is not relevant to the question of whether or not a certificate of reasonable cause should issue under §2465. The argument by claimants misses the fundamental point. The core fact that calls for the issuance of a

---

[1] This court presumes that the Pattersons' do not challenge the constitutionality of 28 U.S.C. 2465 because they do not use the word constitution in their objection, nor do they mention any provision of the United States Constitution.

5

certificate is whether reasonable cause for forfeiture existed at the time of the seizure.

The question of whether reasonable cause actually existed is the critical inquiry for determining whether issuing a certificate of reasonable cause is appropriate. "Reasonable cause," as used by §2465, is synonymous with "probable cause." *Stacy v. Emery*, 97 U.S. 642, 644 (1878); *see also United States v. $13,570.00 U.S. Currency*, 1998 WL 37519 (E.D. LA 1998)(discussing that the *Stacy* logic applies to the newer version of §2465, and regardless, there is little to no difference intuitively between reasonable cause and probable cause). Probable cause is a question of law and is the same in both civil and criminal forfeiture proceedings. In forfeiture cases, the Eleventh circuit has defined probable cause as "reasonable ground for belief of guilt, supported by less than prima facie proof, but more than mere suspicion." *United States v. $4,255,625.39*, 762 F.2d 895, 903 (11th Cir. 1985). Whether there was "reasonable cause," is assessed in terms of the evidence available at the time of the seizure.[2] *See, e.g. United States v. Parcels of Real Property with the Building, Appurtenances, and*

---

[2] However, this issue is up in the air in the 11th Cir. *See United States v. $242,484.00*, 351 F.3d 499, 505 n.9 (11th Cir. 2003) *rehearing en Banc granted, and opinion vacated by* 357 F.3d 1225 (11th Cir. 2004). The only way to assess whether reasonable cause existed within the context of considering whether to grant a certificate of reasonable cause insulating those officers from further suit on the matter, seems to be to inquire if they had reasonable cause at the time they instituted forfeiture proceedings. While the debate is intellectually interesting, it is not all that relevant in this case because the evidence relied on was all in place at the time of the institution of the civil forfeiture proceeding.

*Improvements Located at 255 Broadway*, 795 F.Supp. 1224, 1230 (D.Mass 1992) *aff'd*, 9 F.3d 1000 (1st Cir. 1993). The probable cause/reasonable cause inquiry is a flexible one in which the court considers the "totality of the circumstances." *United States v. $121,100.00*, 999 F.2d 1503, 1506 (11th Cir. 1993). Under 18 U.S.C. § 981(a)(1)(c) the United States can seek civil forfeiture of "any property, real or personal, which constitutes or is derived, proceeds traceable to a violation of section... 1344 of this title." Thus, to support a finding of reasonable cause the United States must show it had a reasonable belief that the property in question is derived from or proceeds traceable to a violation of 18 U.S.C. § 1344. For a certificate reasonable cause, the court is only concerned with whether the actor who sought civil forfeiture had reasonable cause for bringing the civil forfeiture action, not whether the underlying evidence indicated reasonableness or fairness or intelligence on the part of the investigators. Recall that "reasonable cause" must involve a link between the property forfeiture and the underlying probable cause (i.e., there must be some nexus between the crime and the property in question, the property must be the proceeds, etc.).

Considering the totality of the circumstances, the United States had reasonable cause to begin the civil forfeiture proceeding. The basis for the original complaint for forfeiture includes the testimony of MCC employees that extensive work was

7

done at the Heritage Valley Farm; documentation that virtually no billing by the contractors occurred for the work done on the Pattersons' personal residence; evidence of significant over-billing by the same subcontractors at the Guntersville and Albertville branches; and further evidence discovered by investigators indicating that Community Bank paid subcontractors approximately two million dollars from January 1998 to July 2000 for work performed at the Pattersons' personal residence. All of this evidence reasonably suggests a tie between MCC, the Pattersons' residence, and substantial over-billing of the Bank for work performed at its branches.

In fact, almost a month before this civil forfeiture proceeding began, the owners of MCC had been convicted for their role in these alleged crimes. The United States relied on this conviction, along with the evidence of substantial work performed by MCC never paid for by the Pattersons, and the significant overcharges by MCC to the Bank, in instituting the civil forfeiture action. Although, it might have even been possible to conceive of Heritage Valley Farm as constituting the proceeds of the fraud by the owners of MCC, which had already led to a conviction at the time this civil forfeiture was begun, the conviction of the owners of MCC provided a reasonable basis for beginning civil forfeiture proceedings against Heritage Valley Farm itself. Looking at the totality of the circumstances, it was reasonable for the United

8

States to believe that the Pattersons' residence as a integral part of a scheme to defraud the Bank out of the approximately two million dollars the Bank spent to improve the property.

The subsequent return of the criminal indictment against Kennon Patterson by a grand jury could also be evidence of reasonable cause to seek civil forfeiture. Other courts have held explicitly that such the return of a grand jury indictment is *per se* evidence of probable cause. *See, e.g., Friedman v. United States*, 927 F.2d 259, 262 (6th Cir. 1991). While this court puts off the question of whether the indictment entered eleven months subsequent create reasonable cause for a civil forfeiture[3], the criminal indictment of Kennon Patterson for his role in this crime seems to confirm the confidence in the evidence of the reasonable cause the United States presented to the magistrate judge with in its original complaint for forfeiture *in rem*.

This court, reviewing the record without deference to the magistrate judges's findings, finds that there was reasonable cause to believe the real property in question constitutes the proceeds of bank fraud as alleged in the subsequent criminal indictment and in the original verified complaint, and is subject to forfeiture under 18 U.S.C. § 981(a)(1)(c). The Pattersons have presented no

---

[3]As was noted previously, this issue is up for some debate in the 11th Circuit. However, here this court explicitly does *not* rely on the subsequent criminal indictment as evidence of reasonable cause. The court only notes the indictment as mere reinforcing the reasonableness of the evidence presented in the original complaint for forfeiture.

9

substantial or convincing evidence of circumstances that would avoid the implication of probable cause. This court will adopt the magistrate judge's *Recommendations and Findings* in full, and will overrule the Pattersons' objections by separate order.

DONE this _15_ day of October, 2004.

_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE